The Chancellor.
By the original act of incorporation *115 of the city of Newark, power is conferred upon the common council of the city to make and establish ordinances and regulations for the levelling, grading, paving, flagging, or gravelling sidewalks in any street or streets in said city, by the owners or occupants of lots fronting on or adjoining such street or streets, and to appoint one or more discreet and skilful person or persons to superintend the said work, and prescribe the manner in which the same shall be performed. By the original act, and supplements thereto, the council is clothed with authority to enforce such ordinances and regulations. Among other provisions to effect a compliance with such ordinances and regulations, is one, that if the owner or owners of any lot in front whereof the sidewalks shall be directed to be levelled, graded, paved, flagged, curbed, or gravel-led, shall neglect to comply with such ordinance or regulation for the space of one month from the time of its passage, it shall be lawful for the common council to cause the same to be done under the direction of the street commissioner, and the expense thereof, certified and sworn to by the street commissioner, and filed in the office of the city treasurer, shall be and remain a lien upon said lot, until the same shall be paid and settled. By another provision of the act, the mayor and common council are authorized to sell any lot upon which such lien is so created, to pay the amount of the same and the expenses.
The complainant is the owner of a lot of land, with a dwelling thereon, on the corner of Parker street and Mount Pleasant avenue, in said city. The common council have caused the sidewalk in front of said lot to be graded, paved, and guttered. The expenses of the same amount to the sum of five hundred and seventy-six dollars and twenty-seven cents. The lot was advertised for sale to pay this sum. On filing the bill, an injunction was allowed to stay the sale. The defendants now move, on their answer, to dissolve this injunction.
*116 The defendants have no right to sell the complainant’s property, unless they have acquired a lien upon it. They could not acquire a lien, except upon a strict compliance with the provisions of the law under which they assume to act.
The hill alleges the proceedings of the defendants to have been irregular in several particulars.
First. That the act, or supplements, under which the proceedings were had empowers ’ a sale of such lots only as have no dwelling house or other building thereon. This objection was abandoned on the argument. The original act does confine the power of sale to lots which have no buildings thereon. But by a supplement, the power of sale was extended to all lots in the city. The provision of the supplement was probably overlooked in preparing the bill.
Second. It is alleged that the act requires that a written notice should have been given to the complainant, notifying him that the common council had passed an ordinance, or resolution, requiring him to pave and graduate his said sidewalk, before the street commissioner could lawfully do the work, and charge the complainant there-' with, which, it is alleged, was not done in this case.
The answer admits that the complainant had no formal notice that he was required to graduate, pave, and curb his sidewalks, except by advertisements in the public papers, and insists that he was entitled to no other notice.
It is true that the act or its supplements do not make any provision with regard to such notice when the owner of the lot is a resident of the city. But the provisions of the act plainly imply that notice is to be given. A penalty is given for a neglect to comply with the ordinance or regulation. Notice is certainly required, wherever a duty is imposed upon an individual, and a penalty affixed for noncompliance, unless, by the law, it is expressly provided that no notice need be given, (if it can be supposed that the legislature would be willing to impose a penalty *117 for a neglect of a duty under such circumstances). In this ease, notice is not expressly dispensed with by the act. The act gives to the individual the privilege of doing the work himself: if he neglects to comply with the ordinance or regulation for the space of one month from the time of its passage, then the common council may cause the work to be done, and the cost of the same becomes a lien upon the property. The question arises, to what notice is the owner of the property entitled ? By an ordinance of the common council, of the 18th of July, 1836, and a supplement thereto, of the 7th of June, 1841, it is declared, that in ease a sidewalk shall not be curbed and paved according to the ordinance for that purpose, it shall be lawful for the street commissioner to order, in writing, the same to be done within a time mentioned in said order. But by an ordinance of the 1st of April, 1853, the written notice by the street commissioner is dispensed with, and it is declared, that if any owner or occupant of any lot of the said city, where the common council shall have, by ordinance or resolution, ordered the sidewalk to be levelled, &c., shall neglect to do the work, after such resolution or ordinance shall have been published in two daily newspapers in the city of Newark for twenty days, then the street commissioner shall proceed to have the work done.
As far as nonresidents of the city are concerned, this ordinance is in express violation of the provisions of the city charter. They provide, in terms, that if the owner of such lot is a nonresident, it shall be the duty of the street commissioner to give notice of the ordinance, or regulation, by advertising the same in two of the public newspapers printed in the city of Newark for the space of one month. The ordinance declares that such publication for twenty days shall be all that is required. A publication under that ordinance in its application to nonresidents is a nullity, and cannot affect their rights. Was a notice under this ordinance a sufficient notice as regards the complainant, who was. a resident of the city ?
*118 As I have already remarked, the charter does not direct any notice to be given as to residents of the city. But some notice is required. The city of Newark could not acquire a lien of five hundred dollars upon the complainant’s property, in discharging a duty for the complainant which he had neglected to perform upon the defendant’s requirement, when they had not notified him that the duty was required^of him. That the defendants were bound to give some notice to the complainant cannot be questioned, and my impression is very strong that a mere publication in a newspaper is not sufficient notice. It would seem proper that where a duty i's required of a man, for the neglect of which he is subject to a penalty orto an action for debt or damages, he should have a personal notice, unless the law dispenses with it or provides some other notice. This is the reason why the character of the notice was prescribed as to nonresidents, or the legislature would have left the notice, as well of nonresidents as residents, dis'cretionary with the council. In the case of nonresidents, the act declares a publication sufficient. This would seem to have been the view taken by the common council: that, as to residents, a personal notice was required. From 1886 to 1853, by their ordinances, the street commissioner was required to give notice in writing. The publication in a newspaper is made a sufficient notice to nonresidents ex necessitate, but even then it is done by express legislative authority. A publication in a public newspaper is but little better than the notice which Caligula prescribed for his laws. This matter, however, was not very fully discussed on the argument, and I will not conclude the defendants by deciding the question without affording them a further opportunity of being heard*. As I shall hold this injunction upon another question involved in the controversy, an" opportunity will be afforded for a more full investigation and discussion of the matter of notice.
Third. It is insisted, by the bill, that the complainant was never required by the common council — by any resolution or act of theirs — to grade and pave his sidewalks.
*119 On the 4th of February, 1853, the common council established the grade of Parker street, on which the complainant’s lot bounds. On the 3d of March, 1855, they passed a resolution requiring the occupants of lots fronting on Parker street to form, graduate, curb, and pave their sidewalks not less than four feet wide, the balance to be covered with good hard gravel; the same to be done, so far as the ordinance required, under the direction of the street commissioner. The order establishing the grade, and the resolution requiring the owners of lots to pave, were duly advertised. But Parker street was not graded under the order of the 4th of February, 1853. That grade being deemed objectionable, the common council, on the 5th of May, 1854, rescinded the grade adopted by the order of February, 1853, and established a new and different grade. The order establishing the new grade was not advertised, nor was there any resolution passed, after the rescinding of the old grade, and adopting the new one, requiring the owners of adjacent lots to graduate, pave, and gutter their sidewalks. The common council have graduated the complainant’s sidewalk in compliance with the last order for that purpose, and have paved and guttered on that grade, and it is for the expenses incurred in doing this work that the defendants claim a lien upon complainant’s property, and are about selling it to reimburse themselves their outlays.
It is admitted that the complainant was not bound to gutter and pave, until he was required to do so by an order or resolution of the common council. The common council could acquire a lien upon the complainant’s property only for doing that work which they had required the complainant to do, and which he had refused or neglected to perform.
By the resolution of the common council of the 3d of March, 1854, the complainant was required to graduate, pave, and curb his sidewalks. He was obliged to graduate them according to the grade established by the council. *120 Whether this requisition was, in terms, contained in the order or resolution or not, is not material, because this was regulated by the general ordinances of council. By the 9th section of the ordinance of July, 1836, and the second section of the ordinance of 1841, every individual is required to make his sidewalks conform to the grade established by the common council. And, by the fifth section of the ordinance of 1836, and the fourth section of the ordinance of 1841, where the penalty is imposed on' account of a neglect of the duty of paving, &c., in compliance with a resolution of the council, the language is, in case there shall be a neglect to comply with such resolution, “ the graduation and width of the sidewalks being established.”
Here, then, was a resolution, passed on the 3d of March, 1854, by which the -complainant was required to level, grade, curb, and pave his sidewalk, and public notice was given that the complainant must comply with the resolution within twenty days. Now the only way in which he could comply with that resolution was by graduating his sidewalk according to the grade of Parker street, established by the city authorities on the 4th of February, 1853, and by paving the same within twenty days. This he did not do. He neglected that duty. What then had the common council to do in order to acquire a lien upon the complainant’s property, and the right to sell his property to pay the amount of such lien ? Certainly they could do nothing more, or rather they had a right to do nothing more, than cause to be done that same work which they had required the complainant to do, and which he had neglected — and that was to graduate his sidewalk on Parker street according to the grade established, and pave the same. This was all the neglect of duty which was chargeable to the complainant, and for which he was responsible. The grade of 1853 was the only one established within the time allotted him to comply with the resolution, and it was his neglect to conform the gradúa *121 tion of his sidewalks to the then established grade, by which the common council acquired the right themselves to do the work. But the common council have never caused the work to he done which they required the complainant to do. It is true they have graduated his sidewalks, and put down his pavement; but they have graduated and paved, under an order of the common council of the 5th of May, 1854, which establishes a grade entirely different from that of the 4th of February, 1858. The complainant never neglected to comply with a resolution requiring him to do the work which the common council have caused to he done; and it is only when he was in default that they had the right to do the work. Now it might very well happen that, according to one •particular grade, an individual might find it to his advantage not to do the work, while, upon another grado, he might consider it his interest to do it. In this case the complainant, in his bill, gives the reason why he did not do the work under the resolution. He alleges the grade, as then established, required so much cutting of the street in front of the sidewalk that, until such cutting was done, the workmen could not get at the sidewalks to do the work. It is true that grade was rescinded; hut not in time for the complainant to save his default — the twenty days within which the complainant was to comply had expired.
'When the common council rescinded the original grade, and adopted a new one, they should have passed a resolution requiring the owners of lots to graduate and pave in conformity to the new established grade. A default for not complying with a resolution which required them to pave according to one grade, did not make them amenable for not graduating and paving according to another, and a different grade. It was earnestly argued that the resolution did not require the complainant to graduate and pave according to the established grade; hut, as I have before remarked, the resolution required him to *122 graduate and pave his sidewalks within twenty days. The general ordinances required of him to graduate and pave according to the established grade. During the twenty days within which the complainant was to comply there was no other but the grade of February, 1858. He could only comply with the resolution by conformity to that grade. That is the work which he neglected to do; and as the common council could do that work only which he had neglected to do, they had no right to do work which they never required of him, and sell his property to pay for it.
But it is insisted that, under the circumstances of this ease, a court of equity ought not to, interpose because the complainant has not acted in good faith, and is, therefore, not entitled to the benefit of these objections to the proceedings on the part of the city, which, in this case, are mere technical objections. The answer alleges that the grade was changed for his advantage, and that he had notice of the new grade, and promised to comply with it, and then refused; and some other circumstances are stated to show that the complainant has acted in bad faith. All these are new matters, by which the defendants seek to avoid the complainant’s equity. The defendants cannot have the benefit of them upon a motion to dissolve the injunction. It is not necessary for me to intimate any opinion now, as to how the proof of them will finally affect the case.
The motion to dissolve is denied.